Dwight Sheridan **LEWIS**, Plaintiff,

v.

**UNITED STATES** of America, Defendant and Third–Party Plaintiff,

v.

**LOCKWOOD BROTHERS, INC.,**
Third–Party Defendant.

Civ. A. No. 2:92cv408.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 30, 1993.

C. Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for Dwight Sheridan Lewis.

R. John Barrett, Edward J. Powers, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Lockwood Bros., Inc.

Kenneth Melson, Richard Thornberg, John F. Kane, Asst. U.S. Attys., Norfolk, VA, for U.S.

### MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Pursuant to Fed.R.Civ.P. 14(c), defendant and third-party plaintiff, the United States of

---

America (the "United States"), filed a third-party complaint against Lockwood Brothers, Inc. ("Lockwood") and tendered Lockwood as an additional defendant to plaintiff, Dwight Sheridan Lewis ("Lewis"). Lockwood has moved for an order dismissing Lewis' claim against it and striking Lewis' demand for trial by jury.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 3, 1992, Lewis filed this action against the United States and Lockwood seeking damages for personal injury. The underlying facts are set forth in detail in the Memorandum Opinion and Order dated September 29, 1992 812 F.Supp. 620, ("*Lewis I*") and the supplemental Memorandum Opinion and Order dated January 20, 1993 ("*Lewis II*"), and are incorporated by reference here. Briefly, Lewis alleges that on or about August 8, 1990, the tug CAPELLA, which was owned and operated by Lockwood, collided with the vessel UEB–1, which was owned and operated by the United States and on which Lewis was a crewmember; and that, as a consequence of that collision, the starboard stern ladder on the UEB–1 was damaged. The United States and Lockwood contend that the collision never occurred but Lewis says that he witnessed the event and that, two days later, when he was climbing the ladder, a weld securing it to the UEB–1 gave way causing him to fall and to sustain the injuries on which his complaint is based.

The first count of Lewis' complaint asserts a claim in admiralty against his employer, the United States, whom Lewis charges with negligence and with maintaining the UEB–1 in an unseaworthy condition because of a failure to warn him of, and to repair, the unsafe condition caused by the collision. He seeks damages of $600,000 as compensation for his claim against the United States.

The second count of the complaint alleged that Lewis' injury was caused by the negligence of Lockwood in allowing the collision and by the unseaworthy condition of the CAPELLA. Lewis sought compensation of $1.5 million in his claim against Lockwood. The jurisdictional allegations as to the claim against Lockwood were less than clear but, following briefing and oral argument on previously filed dispositive motions, the court held that Lewis did not intend to invoke or in fact invoke admiralty as the jurisdictional basis for his claim against Lockwood.

Although the complaint contained language suggesting the existence of diversity jurisdiction, it was stipulated at oral argument and in subsequent briefs that there was not diversity of citizenship between Lewis and Lockwood. *See generally Lewis I*, 812 F.Supp. at p. 623; *Lewis II*, at 629.[1] The court also declined Lewis' request for the exercise of supplemental jurisdiction over the claim against Lockwood, holding that, although it was "conceivable . . . that this court could exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a)," *see Lewis I* 812 F.Supp. at p. 624, it was inappropriate to do so because "under the somewhat unusual facts giving rise to this action, there is the substantial risk of confusion and prejudice which strongly overrides any benefit that might flow from proceeding in that fashion." *Id.* at p. 625.[2] Accordingly, on September 29, 1992, the court dismissed without prejudice Lewis' claims against Lockwood.

On October 29, 1992, well beyond the time permitted by Fed.R.Civ.P. 14(a) for filing

---

1. On August 6, 1992, Lewis filed an identical action against Lockwood in the Circuit Court of the City of Norfolk. Lockwood attempted to remove that action to this court, but in *Lewis I* the court remanded the action because there was not subject matter jurisdiction over the removed action. *See Lewis I*, 812 F.Supp. at pp. 622–623.

2. Indeed, it was not at all clear that supplemental jurisdiction existed because it would be stretching the facts to find that Lewis' claim against Lockwood is so related to his claim against the United States as to form part of the same case or controversy. Nor is it clear that 28

U.S.C. § 1367 would permit the exercise of supplemental jurisdiction where, as here, the putative supplemental claim could have been asserted as a federal claim in admiralty and was not.

In any event, the court considered the case an inappropriate one for the exercise of supplemental jurisdiction because of the different and unrelated theories of negligence, the presence of two different and unrelated unseaworthiness theories and the apparent difference in the nature of damages evinced by the different amounts of damages sought from the United States and Lockwood.

without leave of court and without seeking leave of court as required by that rule,[3] the United States filed a third-party complaint against Lockwood seeking indemnity alleged to be due: (i) under a warranty of workman-like performance contained in Lockwood's contract with the United States; and (ii) under the active-passive negligence doctrine; or, alternatively, contribution. Finally, the United States tendered Lockwood to Lewis as a defendant alleging:

> Pursuant to the provisions of Rule 14(c) of the Federal Rules of Civil Procedure, the United States also demands judgment against Lockwood Brothers, Inc. in favor of the plaintiff Lewis and requests that Lockwood Brothers make any defenses to the claim of plaintiff as well as to that of the United States in the manner provided in the Rules.

Lockwood answered the third-party complaint on November 23, 1992, denying liability to the United States and expressly agreeing "to respond to the claim of plaintiff as provided for by Rule 14(c) of the Federal Rules of Civil Procedure."

Lewis neither opposed the tender of Lockwood nor amended his complaint to assert a claim against Lockwood. Lockwood filed the current motion to dismiss solely on the basis of the allegations made against it by Lewis in the second count of Lewis' complaint which, of course, was dismissed on jurisdictional grounds in *Lewis I.* Lockwood's current motion was filed pursuant to Fed.R.Civ.P. 12(b)(6) but, because it relies on statements in affidavits filed by Lewis in connection with other motions, it must be treated as a motion for summary judgment made pursuant to Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b). The basis for the requested dismissal is that Lewis' affidavits establish a breach in the chain of causation which entitles Lockwood to judgment as a matter of law.

The original complaint also demanded that Lewis' claim against Lockwood be tried to a jury and Lockwood also has moved to strike that demand. Lockwood's motion does nothing more than argue that Lewis' claim against it is really an admiralty claim as to which trial by jury is not available. This, of course, is merely an assertion that the court erred when it refused to hold that Lewis had invoked admiralty jurisdiction in its claim against Lockwood.

Lockwood has not objected to its belated impleader in this action by the United States, and it has agreed to respond directly to Lewis pursuant to Rule 14(c). Both Lockwood and the United States have made clear throughout the course of this litigation that they want all of Lewis' claims to proceed in admiralty and to be tried without a jury. Lewis would prefer to have his case against Lockwood proceed in this court if it is tried to a jury; however, Lewis objects to being forced to proceed against Lockwood in admiralty, without a jury, in light of the fact that he is prosecuting an action against Lockwood in state court where he is entitled to a jury under the "saving to suitors" clause of 28 U.S.C. § 1333(1).

## DISCUSSION

Fed.R.Civ.P. 14(c) allows a defendant in an admiralty action to implead a third-party defendant "not only on a theory of liability over to the third-party plaintiff for any recovery the original plaintiff may secure from such third-party plaintiff (the original defendant), but also on a theory that the third-party defendant is directly liable to the original *plaintiff* either jointly with the original defendant or instead of the original defendant." 3 *Moore's Federal Practice* ¶ 14.34 (1993) (emphasis original). However, as discussed fully below, Rule 14 does not provide a basis for subject matter jurisdiction. Because of its unusual factual setting and unique procedural history, this case presents once again the need to consider subject matter jurisdiction as to Lewis' claim against

---

**3.** Although Rule 14(c) is silent on the period within which a third-party complaint may be served without notice or motion, the timing appears to be governed by Rule 14(a). *See* 6 Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1465, at p. 489 (1990). Rule 14(a) provides: "the third-party plaintiff need not ob-tain leave to make service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action." The United States' original answer was filed on August 7, 1992.

Lockwood and to decide whether the United States can invoke Rule 14(c) to tender Lockwood to Lewis, thereby forcing Lewis to proceed against Lockwood in admiralty, where, as here: (1) there is no diversity jurisdiction to support a common law action triable by jury in federal court by Lewis directly against Lockwood; (2) the court previously has held that Lewis did not invoke admiralty jurisdiction as to his claim against Lockwood; and (3) the court has declined to exercise supplemental jurisdiction over the claim.[4]

 To be cognizable in federal court, third-party claims made pursuant to Rule 14 must fall within the court's subject matter jurisdiction. It is settled that Rule 14 does not create subject matter jurisdiction. *See, e.g., Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir.1959); Fed.R.Civ.P. 82 (The Federal Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts...."). Accordingly, an independent basis of jurisdiction must exist as to third-party claims asserted under that rule. *See* 6 Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1444 (1990). Courts traditionally examine the claim of the party seeking to recover when determining whether subject-matter jurisdiction exists. This analysis is straight forward in traditional, non-admiralty, impleader situations:

> In traditional indemnity impleader [under Rule 14(a)], the *defendant* seeks to recover from the third party. Thus, there is no question that an indemnity claim is the defendant's. Upon determining that the [defendant's] claim [against the third-party defendant] arises out of the same "nucleus of operative facts" as plaintiff's claim against [the original] defendant, courts have always found supporting ancillary jurisdiction.

D. Ciolino & G. Roberts, *The Missing Direct–Tender Option In Federal Third–Party Practice: A Procedural and Jurisdictional Analysis*, 68 N.C.L.Rev. 423, 445 (1990) (hereinafter "Ciolino & Roberts").

 The analysis is more complicated when a defendant in an admiralty action seeks to implead and to tender a third-party defendant pursuant to Rule 14(c). This is because in such claims, the defendant presses the plaintiff's claim against the third-party defendant requiring it and the plaintiff to litigate directly and allowing the plaintiff, if successful, to recover directly from the third-party defendant. It is unclear, however, whose claim a court should analyze in determining whether subject matter jurisdiction exists relative to the plaintiff's "involuntary" claim against the tendered third-party defendant:

> Unfortunately, the courts in Rule 14(c) tendering cases have yet to articulate clearly which claim is jurisdictionally significant. Furthermore, most courts have failed even to recognize that the issue exists. The vast majority simply have evaluated tendered defendant impleader as if it were identical to indemnity impleader without discussion or analysis.

Ciolino & Roberts, 68 N.C.L.Rev. at p. 446 (emphasis in original) (citations omitted). Where a defendant impleads a third-party and tenders it to the plaintiff on the theory that the third-party is wholly liable to the plaintiff, and thereby seeks to have the action "proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff," *see* Fed.R.Civ.P. 14(c), it seems logical and consistent with the basic principles of federal jurisdiction generally applicable to third-party practice that the court should assess subject matter jurisdiction by considering all of the plaintiff's claims, both voluntary and involuntary.

In *Lewis I* and *Lewis II*, the court analyzed and decided the question of subject matter jurisdiction over Lewis' claim against Lockwood. As the court pointed out in *Lewis II*, " 'it is clear that Rule 9(h) vests the choice [whether to proceed in admiralty] in the plaintiff,' " and that this choice " 'should not be forced upon him.' " *Id.*, at 623 (citing

---

4. None of the parties to this action have raised the issue of whether the court has subject matter jurisdiction over the third-party claims. However, the court is obligated to consider the issue when "lack of subject matter jurisdiction ... is seriously in doubt." *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir.1985). Moreover, the jurisdictional issue is inherently presented by Lockwood's motion to strike the demand for trial by jury.

*Siragusa v. Standard Steamship Owners Protection (In re: Armatur),* 710 F.Supp. 404, 405 (D.P.R.1989); 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1313, at p. 715 (1990)). This is because the choice whether or not to proceed in admiralty carries with it "numerous and important consequences," *see T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 586 (5th Cir.1983), the most important of which, in this case, is the right to a jury trial.

On the facts and pleadings in this case, the court held that, because Lewis did not invoke or intend to invoke the court's admiralty jurisdiction, he could not be forced to proceed against Lockwood in admiralty. Merely invoking Rule 14(c), as the United States now has done, does not change this conclusion. Accordingly, the only possible jurisdictional basis over a claim by Lewis against Lockwood would be supplemental jurisdiction under 28 U.S.C. § 1367 which, for reasons previously stated, the court declined to exercise.

Nothing cited by the parties in their briefs on the motion to strike the demand for trial by jury requires a different result. To the contrary, the action of the United States in tendering Lockwood under Rule 14(c), Lockwood's acceptance of an untimely impleader and tender, as well as the efforts of Lewis to preserve his right to trial by jury, present additional exceptional circumstances warranting the declination of supplemental jurisdiction.

Lewis is not entitled to a jury trial in admiralty in federal court as to his claim against Lockwood because no diversity of citizenship exists. However, under the "saving to suitors" clause of 28 U.S.C. § 1333(1) Lewis has the right to proceed against Lockwood in state court, thereby preserving his common law remedies and his Seventh Amendment right to a jury trial. "The privilege of prosecuting maritime causes of action in non-admiralty courts, conferred by the saving to suitors clause, has always been of particular importance in personal injury and death actions in which plaintiffs prefer to have the damage assessed by a jury." G.

Gilmore & C. Black, *The Law of Admiralty* § 6–62, at 468 (2d ed. 1975).

If the United States were allowed to invoke the procedure permitted by Rule 14(c) to force Lewis to proceed to judgment against Lockwood in admiralty without a jury, and that judgment were to preclude, by estoppel or as res judicata, Lewis' state court action against Lockwood, Lewis would be deprived of the important substantive right conferred upon him by the "saving to suitors" provision of 28 U.S.C. § 1333(1). The result would be to permit a federal procedural rule to eliminate a federal substantive right. This is impermissible because "[i]f claimants have a substantive right to pursue their cause of action under the 'saving to suitors clause,' it can hardly be abrogated by a federal procedural rule." *See Jefferson Barracks Marine Service, Inc. v. Casey,* 763 F.2d 1007, 1011 (8th Cir.1985); *Dammers & Vanderheide & Scheepvaart Maats Christina B.V. v. Corona,* 836 F.2d 750, 760 (2d Cir. 1988). *Cf. Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 109 (4th Cir.1991) ("federal procedures are not intended to have substantive effect").

This view is consistent with the Rules Enabling Act, which provides in pertinent part: "[The Federal Rules of Civil Procedure] shall not abridge, enlarge or modify any substantive right...." 28 U.S.C. § 2072(b). Prior to the 1988 revision of that statute, which added (b), the second paragraph of § 2072 read:

Such rules shall not abridge, enlarge or modify any substantive right *and shall preserve the right of trial by jury as at common law* and as declared by the Seventh Amendment to the Constitution.

28 U.S.C. § 2072 (1982) (emphasis added). The "Commentary On 1988 Revision" to § 2072 states:

[S]ubdivision (b) continues the instruction that no rules adopted under (a) may alter any substantive right, an instruction previously contained in the second paragraph of the superseded § 2072. Also in that paragraph was the direction that the rules not impair the right to trial by jury guaranteed by the Seventh Amendment. That direction is omitted, but without moment: the Constitution needs no statute to re-

mind us that neither a rule nor a statute can upset a constitutional requirement.

Thus, it is apparent that in this case there is a conflict between the "saving to suitors clause" of 28 U.S.C. § 1333(1) and Rule 14(c) which, if given force here, would allow the United States and Lockwood to deprive Lewis of the rights secured by that statute. As in *Lewis II,* "[t]he court declines to interpret the federal rules in a fashion which will have that result, particularly upon the fundamental right to trial by jury where, as here, plaintiff has indicated in several ways that he does not desire to proceed in admiralty." *Id.* at 628.

The same analysis would preclude application of Rule 14(c) to deprive Lewis of his rights under 28 U.S.C. § 1333(1) even if the starting point for the jurisdictional analysis as to the claim asserted against the tendered defendant is the original admiralty claim by Lewis against the United States. The fundamental principles which preclude use of a federal procedural rule to abrogate a federal substantive right would apply with equal force to the claim against the tendered defendant. That is especially true where, as here, the federal substantive right which would be abrogated is one of constitutional origin.

Accordingly, the court finds that under the facts and procedural history of this case, the United States may not tender Lockwood to Lewis pursuant to Rule 14(c), although it may proceed with its third-party action against Lockwood in admiralty for contribution or indemnity. Hence, the claim of Lewis against the tendered defendant Lockwood will be dismissed without prejudice so that it may be pursued in the pending state court action. This resolution makes it unnecessary to decide Lockwood's motion to dismiss that claim, and moots the motion to strike Lewis' jury demand.

It is so ORDERED.